TASHIMA, J.,
dissenting:
I respectfully dissent. Because the dog attack was an unreasonable use of force as a matter of law, which then precipitated the officers’ use of lethal force, I would reverse the district court’s grant of summary judgment in favor of defendants in this § 1983 excessive force case.
1. The majority ignores the single most important factor in judging whether the use of force is reasonable: the immediacy of the threat posed by the suspect to the officers. Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); Chew v. Gates, 27 F.3d 1432, 1441 (9th Cir.1994) (citing Tennessee v. Garner, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). There is no evidence in the record to suggest that the officers believed that James posed an immediate threat, and yet they unleashed “severe” force. Chew, 27 F.3d at 1442, Miller v. Clark County, 340 F.3d 959, 964 (9th Cir.2003) (discussing the severity of the use of canines to arrest suspects).
When the officers released the dog into the room where James was confined, he was surrounded by the police. Officers were posted at the only window of the bedroom where James had been holed up for more than an hour, thus giving them a clear view of James and his activities. More officers were in the hallway immediately outside the bedroom door. The officers knew that James had mental problems and probably was armed with a knife (which, unlike a gun, could not be used to injure the officers through the window or the door). Officers at the window could see that James was lying still on the floor in front of the door. There was no one else in the house or its vicinity. And, up until the moment defendants battered the door, which came falling in and the dog was set upon him, James “did not assault and/or threaten the officers and was not actively resisting.”
This evidence compels the conclusion that James did not pose an immediate threat to the officers or others. Black’s Law Dictionary 816 (9th ed.2009) (defining “immediate” as “[ojccuring without delay; instant”); cf. Miller, 340 F.3d at 965 (finding the suspect posed an immediate threat where he recklessly drove a car in flight from officers and then fled on foot, possibly armed, in a dark wooded rural area). Moreover, this was not a situation in which the officers were “forced to make split-second judgments” in a “rapidly evolving” situation. Graham, 490 U.S. at 396-97, 109 S.Ct. 1865. To the contrary, the officers uniformly agreed that they were in no hurry. Instead, they took their time to develop a plan to apprehend James.
A cornerstone of this plan was to unleash a dog attack on an admittedly paranoid, but unresponsive, suspect who thought everyone was trying to kill him. These uncontroverted facts compel the conclusion that the officers’ unleashing of severe force, in the absence of an immediate threat or active resistance, was excessive.
2. The dog attack proximately caused the shooting. Although the defensive use of lethal force in response to a significant threat of death or injury is reasonable, Garner, 471 U.S. at 3, 105 S.Ct. 1694, “[wjhere an officer intentionally or recklessly provokes a violent confrontation, if the provocation is an independent Fourth Amendment violation, he may be held liable for his otherwise defensive use of deadly force.” Billington v. Smith, 292 F.3d 1177, 1189 (9th Cir.2002). Accordingly, even if, as the majority concludes, the shooting itself was justified in the moment, the officers may be held liable for James’ death if they unreasonably provoked the *784 violent encounter that precipitated the shooting. See id. (“[I]f an officer’s provocative actions are objectively unreasonable under the Fourth Amendment ... liability is established, and the question becomes the scope of liability, or what harms the constitutional violation proximately caused.”)
Importantly, the officers’ use of force was reckless, and not merely negligent. Id. at 1190-91. The officers knew that, although James was lying on the floor and generally unresponsive, he earlier had “gone nuts” on his friends, believed people were trying to kill him, and was probably armed with a knife. On these facts, the officers were reckless of the possibility that they would provoke a violent response. The release of the dog proximate-Iy caused the violent confrontation that led to James’ shooting death. I would, therefore, reverse the grant of summary judgment to Defendants and remand for further proceedings.
3. I also would reverse the grant of summary judgment on Plaintiffs Fourteenth Amendment claim for deprivation of the companionship and society of her son, James. As summarized above, the uncon-troverted facts show that the officers recklessly provoked a violent confrontation with James, leading to his death. This shocks the conscience under the deliberate indifference standard. Wilkinson v. Torres, 610 F.3d 546, 554 (9th Cir.2010) (“Where actual deliberation is practical, then an officer’s ‘deliberate indifference’ may suffice to shock the conscience.”) (internal quotation marks, citations and alterations omitted); Fanner v. Brennan, 511 U.S. 825, 839, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (deliberate indifference requires that “a person consciously disregard a substantial risk of serious harm”) (internal quotation marks and alteration omitted).
For these reasons, I would reverse the judgment of the district court, and respectfully dissent.